UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRETT CALDWELL, | CASE NO. C17-1741JLR |
| Plaintiff, | ORDER |
| v. | |
| THE BOEING COMPANY, | |
| Defendant. | |

## I. INTRODUCTION

Before the court is Defendant The Boeing Company's ("Boeing") motion to dismiss portions of Plaintiff Brett Caldwell's second amended complaint. (2d MTD (Dkt. # 25); *see also* SAC (Dkt. # 24).) The court has reviewed the motion, all submissions filed in support of and opposition to the motion, the relevant portions of the record, and

//

//

//

the applicable law. Being fully advised,[1] the court grants in part and denies in part the motion.

## II.   BACKGROUND

Mr. Caldwell is a thirty-four-year-old, African-American man, who was employed by Boeing as an Automated Fiber Placement ("AFP") Operator. (SAC ¶¶ 2, 13; *see also id.* ¶ 21.) Mr. Caldwell began working for Boeing on January 11, 2013. (*Id.* ¶ 14.) During the time he worked for Boeing, Mr. Caldwell was the only African-American who worked in the building to which he was assigned in Everett, Washington. (*Id.*)

On June 5, 2013, a Caucasian Boeing security officer stopped Mr. Caldwell as he was leaving the front gate. (*Id.* ¶ 15.) The Officer approached Mr. Caldwell "in a semi-crouched position with his hand on his weapon." (*Id.*) After the officer reviewed Mr. Caldwell's registration, the officer said that he saw Mr. Caldwell's car parked in the same spot every day. (*Id.*) Mr. Caldwell alleges that the officer "assumed because of [Mr. Caldwell's] race that [Mr. Caldwell] was hiding the car on Boeing property." (*Id.*)

On January 15, 2016, Mr. Caldwell was attending a meeting in Building 88 in Everett, Washington. (*Id.* ¶ 16.) After the meeting, Mr. Caldwell asked a manager to direct him to the nearest water fountain. (*Id.*) The manager directed Mr. Caldwell to a water cooler "in the next set of offices across the hall." (*Id.*) When Mr. Caldwell attempted to use the water cooler, an older white woman yelled, "What are you doing?" (*Id.*) She informed Mr. Caldwell that he could not drink from the water cooler because

---

[1] No party asks for oral argument, and the court does not consider oral argument to be helpful to its disposition of this motion. *See* Local Rules W.D. Wash. LCR 7(b)(4).

he was not part of the 787 program. (*Id.*) Mr. Caldwell alleges that "[t]he real reason . . . [the woman] did not want [him] drinking from th[at] particular water fountain is that the water fountain was the one she used and . . . [Mr. Caldwell] is African American." (*Id.*) When Mr. Caldwell objected "that all Boeing employees drink from the water fountains," the woman threatened to "write [him] up the next time he attempt[ed] to drink water from that cooler." (*Id.*)

On January 20, 2016, Ron Anderson, who is a gym recreation administrator at Boeing, accused Mr. Caldwell "of trying to steal a basketball because he is a large African American male." (*Id.* ¶ 17.) Mr. Caldwell took his own basketballs to the facility. (*Id.*) When Mr. Anderson, who is Caucasian, saw Mr. Caldwell sitting at the top of the stairs with two basketballs, Mr. Anderson confronted Mr. Caldwell and accused Mr. Caldwell of theft. (*Id.*) Mr. Caldwell showed his basketballs to Mr. Anderson to confirm that the basketballs were not Boeing's property. (*Id.*) Mr. Anderson then told Mr. Caldwell that he was not allowed to bring his own basketballs to the court. (*Id.*) Mr. Caldwell alleges that this statement was false and that Mr. Anderson made it to discourage Mr. Caldwell "from using the Boeing basketball [c]ourt because of his race." (*Id.*) A few weeks later a sign appeared in the gym stating, "no personal basketballs allowed." (*Id.*) Mr. Caldwell alleges that the sign shows that "Boeing ratified Mr. Anderson's discriminatory conduct." (*Id.*)

On February 13, 2016, Mr. Anderson observed Mr. Caldwell playing basketball at the gym and dunking the basketball. (*Id.* ¶ 18.) Mr. Caldwell never saw any of the Caucasian players dunk the ball, and Mr. Caldwell believes they lacked the ability to do

so. (*Id.*) The next day, Mr. Anderson posted a sign stating, "no dunking." Mr. Caldwell alleges that, because he was the only person at the gym who could dunk, "the signs were clearly directed at [him] due to the fact that he is African American." (*Id.*)

In March 2016, while he was playing basketball, Mr. Caldwell inadvertently cursed. (*Id.* ¶ 19.) Mr. Caldwell alleges that over the years he had heard Caucasian players curse without repercussion while playing at the Boeing gym. (*Id.*) Nevertheless, Mr. Anderson "immediately approached [Mr. Caldwell] and told him to stop swearing." (*Id.*) Mr. Caldwell alleges that he apologized and resumed playing. (*Id.*) Mr. Anderson continued looking at Mr. Caldwell with his arms folded. (*Id.*) Mr. Caldwell responded by stating: "I apologized. What more do you want?" (*Id.*) Mr. Anderson replied, "I don't like your attitude," and he asked Mr. Caldwell to turn over his badge. (*Id.*) After Mr. Caldwell refused, Mr. Anderson told Mr. Caldwell to leave the gym. (*Id.*) When Mr. Caldwell started to leave, Mr. Anderson allegedly blocked the door, screamed at Mr. Caldwell demanding his badge, and threatened to call the police. (*Id.*) Mr. Caldwell alleges that "Mr. Anderson's tantrum was racially motivated." (*Id.*) When the Boeing police arrived, Mr. Caldwell alleges that they wrote down only Mr. Anderson's version of events and told Mr. Caldwell to follow Mr. Anderson's instructions when he demands to see Mr. Caldwell's identification. (*Id.*) The police escorted Mr. Caldwell to his locker and told him that he could no longer play basketball that day. (*Id.*) Mr. Caldwell alleges that he emailed his manager, Dean Bogardus, about the incident, but Mr. Bogardus took no action. (*Id.*)

//

In December 2016, while Mr. Caldwell was working, a white male co-worker started to mock Mr. Caldwell "by walking with his shoulders rolled and his arms dangling like an ape." (*Id.* ¶ 20.) Mr. Caldwell alleges that his co-worker was "mock[ing] [his] race by walking like an ape." (*Id.*) When Mr. Caldwell had completed his task, the co-worker stated loudly enough for everyone in the area to hear, "This is why I can't stand you Blacks." (*Id.*) The co-worker then falsely told others that Mr. Caldwell had offered to meet him in the parking lot to fight. (*Id.*) Mr. Caldwell complained about the incident to Mr. Bogardus. (*Id.*) In response, Mr. Caldwell alleges that Mr. Bogardus (1) accused Mr. Caldwell of being in the wrong, (2) did not want to hear Mr. Caldwell's side of events because Mr. Caldwell is African-American, (3) "did nothing" to address the conduct of the co-worker, and (4) threatened to fire Mr. Caldwell. (*Id.*)

Mr. Caldwell also alleges that he told Mr. Bogardus that Tom Hammond, the AFP Operator Team Lead, was harassing him; but instead of addressing the problem, Mr. Bogardus "joined in on the racial intimidation." (*Id.* ¶ 21.) Mr. Bogardus told Mr. Caldwell that he needed to get along with Mr. Hammond to make Mr. Bogardus's job easier. (*Id.*) Mr. Hammond allegedly told Mr. Caldwell that Mr. Caldwell scared him and that is just the way that Mr. Hammond was raised. (*Id.*)

In addition, Mr. Caldwell alleges that Manager Ron Jarvis would address Mr. Caldwell uniquely "by imitating a stereotypical African American manner of speech" and by calling Mr. Caldwell "slick" and "homeboy" or by saying "yo, yo, yo, yo, yo." (*Id.*

¶ 22.)  Mr. Caldwell reported Mr. Jarvis's behavior to Manager Adita Weatherbee, but Mr. Caldwell alleges that Boeing did not nothing to stop Mr. Jarvis's behavior.  (*Id.*)

Finally, Mr. Caldwell alleges that Boeing terminated his employment on February 10, 2017.  (*Id.* ¶¶ 13, 23.)  Boeing stated that it terminated Mr. Caldwell for improper use of a computer.  (*See id.* ¶ 23.)  Mr. Caldwell, however, alleges that his computer use "was clearly permitted pursuant to the terms of [his] employment."  (*Id.*)  He also alleges that many of his white coworkers used the computer for just as much time as he did, but Boeing did not terminate his white co-workers for the same conduct.  (*Id.*)

On August 17, 2017, Mr. Caldwell filed an administrative complaint with the Equal Employment Opportunity Commission ("EEOC").  (*Id.* ¶ 25.)  On August 23, 2017, the EEOC issued a "Right to Sue" notice to Mr. Caldwell.  (*Id.* ¶ 25, Ex. 1.)  Mr. Caldwell filed suit on November 11, 2017.  (*See* Compl. (Dkt. # 1).)

On January 12, 2018, Boeing move to dismiss Mr. Caldwell's original complaint. (1st MTD (Dkt. # 19).)  Mr. Caldwell did not file a response to Boeing's motion (*see generally* Dkt.); instead, on February 9, 2018, Mr. Caldwell filed a first amended complaint, and then on February 13, 2018, he filed a second amended complaint (*see* FAC (Dkt. # 22); *see also* SAC).  On March 26, 2018, the court denied Boeing's first motion to dismiss as moot because Mr. Caldwell's second amended complaint superseded his original complaint and rendered his original complaint without legal effect.  (3/26/18 Order (Dkt. # 28).)

In his second amended complaint, Mr. Caldwell asserts claims for (1) racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e-2, *et seq*. (SAC ¶¶ 26-28); (2) hostile work environment based on race or retaliation for engagement in protected activity in violation of the same federal statute (*id.* ¶¶ 29-32); and (3) intentional infliction of emotional distress based on Washington common law (*id.* ¶¶ 33-36). On February 27, 2018, Boeing filed the present motion to dismiss claims two and three of Mr. Caldwell's second amended complaint (*see* 2d MTD), which Mr. Caldwell opposes (*see* Resp. (Dkt. # 26)). The court now considers Boeing's motion.

## III.  ANALYSIS

**A.  Standard for a Motion to Dismiss**

Rule 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677-78. It is not

enough for a complaint to "plead[] facts that are 'merely consistent with' a defendant's liability." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). Dismissal under Rule 12(b)(6) can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

**B. Hostile Work Environment**

In count two, Mr. Caldwell alleges a claim for hostile work environment based both on race and retaliation for his engagement in a protected activity. (SAC ¶¶ 29-32.) In order to state a hostile work environment claim, Mr. Caldwell must show that his "workplace [was] permeated with discriminatory intimidation." *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995) (citing *Harris*, 510 U.S. at 21-22). Specifically, the prima facie elements of a hostile work environment claim, include (1) verbal or physical conduct due to the plaintiff's race or engagement in a protected activity; (2) the conduct is unwelcome; and (3) the conduct is "sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment."[2] *See Johnson v. Riverside*

---

[2] In applying these elements, courts do not consider discrete, tangible employment actions that could support an independent discrimination (or retaliation) claim. *See Porter v. Cal. Dep't of Corr.*, 383 F.3d 1018, 1027-28 (9th Cir. 2004), *as amended by* 419 F.3d 885 (9th Cir. 2005) (holding that discrete, tangible employment actions could not be considered when evaluating a hostile work environment claim and stating that "if the flames of an allegedly hostile environment are to rise to the level of an actionable claim, they must do so on the fuel of timely non-discrete acts"); *Moore v. King Cty. Fire Protection Dist. No. 26*, No. C05-442JLR, 2005 WL 2898065, at *3 (W.D. Wash. Oct. 31, 2005) ("[A] court examining a hostile work environment claim must 'sift[] out 'discrete,' actionable incidents and judge the claim solely on evidence of 'non-discrete' acts.") (quoting *Porter*, 383 F.3d at 1028). Thus, for purposes of

*Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) (citing *Manatt v. Bank of Am.*, 339 F.3d 792, 798 (9th Cir. 2003) (listing the elements for a hostile work environment claim based on race); *see also Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000) (holding that an employer may be liable for a retaliation-based hostile work environment); *Moore*, 2005 WL 2898065, at *2 ("Harassing an employee for engaging in protected activity is no different than harassment based on race or gender."). At the motion to dismiss stage, Mr. Caldwell need not support his allegations with evidence, but his complaint must allege sufficient facts to state the elements of a hostile work environment claim. *See Twombly*, 550 U.S. at 570; *see also Johnson*, 534 F.3d at 1122 (citing *Williams v. Boeing Co.*, 517 F.3d 1120, 1130 (9th Cir. 2008) ("Even though heightened pleading is not required in discrimination cases, the complaint must still 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)))).

A work environment must be both subjectively and objectively hostile.[3] *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004). In evaluating the objective hostility of a work environment, the Ninth Circuit uses a "totality of the circumstances test to determine whether a plaintiff's allegations make out a colorable claim of hostile work environment," considering factors such as "frequency, severity and level of

_____

evaluating Mr. Caldwell's hostile work environment claim, the court does not consider Boeing's termination of Mr. Caldwell. (*See* SAC ¶ 23 (describing Mr. Caldwell's termination).)

[3] Boeing does not challenge Mr. Caldwell's subjective belief that his work environment was hostile. (*See generally* 2d MTD.)

interference with work performance." *Id.* at 1113; *Brooks v. City of San Mateo*, 229 F.3d 917, 924 (9th Cir. 2000). In addition, "[w]hen assessing the objective portion of a plaintiff's claim, [the court] assume[s] the perspective of the reasonable victim." *Brooks*, 229 F.3d at 924 (citations omitted); *McGinest*, 360 F.3d at 1115 ("We now state explicitly . . . that allegations of a racially hostile workplace must be assessed from the perspective of a reasonable person belonging to the racial or ethnic group of the plaintiff.").

   1. Hostile Work Environment Based on Racial Animus

   Boeing moves to dismiss Mr. Caldwell's claim for a hostile work environment based on racial animus. (*See* MTD at 6-11; *see also* SAC ¶¶ 29-32.) The court first reviews the nature of Mr. Caldwell's allegations concerning his claim for a hostile work environment based on race. (*See* SAC ¶¶ 29-32.) Only three of the alleged incidents overtly relate to Mr. Caldwell's race. First, Mr. Caldwell alleges that in December 2016, a white male Boeing employee mocked him "by walking with his shoulders rolled and his arms dangling like an ape." (SAC ¶ 20.) During the same incident, the white employee also stated loudly enough for others to hear, "This is why I can't stand you Blacks." (*Id.*) There is no question that these alleged acts indicate racial animus. Second, Mr. Caldwell alleges that a manager addressed him uniquely "by imitating a stereotypical African American manner of speech" and by calling him "slick" and "homeboy" or by saying "yo, yo, yo, yo, yo." (*Id.* ¶ 22.) This latter allegation supports Mr. Caldwell's hostile work environment claim because the Ninth Circuit has held that a coworker's use of a "code word or phrase," under certain circumstances, can contribute to a hostile work

environment claim. *Johnson*, 534 F.3d at 1123 (citing *McGinest*, 360 F.3d at 1117; *El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1073-74 (9th Cir. 2005)). Finally, although Mr. Caldwell's co-worker did not use a "code word or phrase" when she allegedly denied his access to a particular drinking fountain, given the history of segregation in this country, those allegations fall within a similar category of "coded" conduct related to racial discrimination or animus. The inference that racial animus motivated the forgoing alleged incidents "is a reasonable one that [the court] must construe in [Mr. Caldwell's] favor at the motion to dismiss stage." *See Johnson*, 534 F.3d at 1123.

In the remaining incidents, the conduct Mr. Caldwell describes is not overtly racial in nature. For example, Mr. Caldwell infers that the Boeing security officer stopped him on June 5, 2013, "because of [his] race." (*See id.* ¶ 15.) Mr. Caldwell also infers that racial animus underlies his disputes with Mr. Anderson over the rules governing Boeing's employee basketball court, which culminated in Mr. Anderson calling Boeing police officers after Mr. Caldwell had already agreed to leave the gym for the day.[4] (*See id.*

---

[4] Mr. Caldwell also generally alleges Mr. Bogardus and Mr. Hammond harassed him due to his race. (SAC ¶ 21.) Although Mr. Caldwell alleges that Mr. Hammond and Mr. Bogardus engaged in "racial intimidation," Mr. Caldwell never specifically describes their behavior in this regard or when the harassment occurred. (*See id.* ("Dean Bogardus, a white man, joined in on the racial intimidation when [Mr. Caldwell] informed him that Tom Hammond, the [AFP] Operator Team Lead, was harassing him.").) The most detail that Mr. Caldwell provides is that Mr. Hammond stated that Mr. Caldwell scared him and "[t]his is just the way [he] was raised." (SAC ¶ 21.) The court need not accept conclusory allegations as true. *Johnson*, 534 F.3d at 1123 n.4 ("Not *every* conclusory allegation must be accepted as true . . . ."). However, because the court concludes that the remaining allegations in Mr. Caldwell's second amended complaint sufficiently state a hostile work environment claim based on race, the court need not decide whether it must accept these generalized allegations as true or as motivated by Mr. Caldwell's race. *See id.*

¶¶ 17-19.)  Boeing urges the court to ignore these incidents, in part, because "these allegations lack any connection to Mr. Caldwell's race."  (MTD at 8.)

If the court evaluated these incidents in isolation, it might agree with Boeing.  But that is not how the Ninth Circuit instructs the court to evaluate Mr. Caldwell's workplace harassment claim.  The court looks at the totality of the circumstances, *see McGinest*, 360 F.3d 1113, from the perspective of a reasonable victim—in this case an African-American employee, *see Brooks*, 229 F.3d at 924; *McGinest*, 360 F.3d at 1115. Given the totality of the circumstances here—including that Mr. Caldwell was the only African-American employee in his building and he had been subjected to other overtly racially-charged comments and behavior, and viewing the alleged incidents from the perspective of a reasonable African-American victim, the court disagrees with Boeing. Instead, the court concludes that it cannot disregard these alleged incidents in evaluating Mr. Caldwell's workplace harassment claim based on racial animus.  *See, e.g.*, *Johnson*, 534 F3d at 1123 (ruling that it is reasonable at the motion to dismiss stage to draw the inference that racial animus motivated a nurse's frequent requests that an African-American plaintiff perform the typical tasks of a maintenance man); *see also Nickelberry v. Ventura Cty. Probation Agency*, No. 2:09-cv-8424-JHN-RCx, 2010 WL 11459932, at *6 (C.D. Cal. Oct. 4, 2010) (concluding that summary judgment on hostile work environment claim was not appropriate because, although some comments, "when viewed in isolation, may not be imbued with racial implications," when the twenty-plus comments were viewed as a whole, they were "potentially rife with racially charged— and arguably racially denigrating—meaning").  Thus, in evaluating Mr. Caldwell

workplace harassment claim, the court will consider all of the foregoing described incidents.

Next, the court evaluates whether the alleged conduct was sufficiently severe or pervasive to violate Title VII. In doing so, the court examines the totality of the circumstances, including, "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance*." Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (quoting *Harris*, 510 U.S. at 23); *Johnson*, 534 F.3d at 1122. "The required level of severity or seriousness 'varies inversely with the pervasiveness or frequency of the conduct.'" *Nichols v. Azteca Rest. Enters., Inc*., 256 F.3d 864, 872 (9th Cir. 2001) (quoting *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991)). "[S]imple teasing, . . . offhand comments, and isolated incidents (unless extremely serious)," do not amount to a hostile or abusive work environment. *Faragher*, 524 U.S. at 788 (internal quotations and citation omitted); *see Davis v. Team Elec. Co.*, 520 F.3d 1080, 1095 (9th Cir. 2008). In contrast, a working environment is abusive when "hostile conduct pollutes the victim's workplace, making it more difficult for [him] to do [his] job, to take pride in [his] work, and to desire to stay on in [his] position." *Davis*, 520 F.3d at 1095 (quoting *Steiner v. Showboat Operating Co*., 25 F.3d 1459, 1463 (9th Cir. 1994)).

Boeing analogizes this matter to cases in which courts have deemed harassing comments insufficiently frequent or severe to survive a motion to dismiss. (*See* MTD at 10-11.) For example, Boeing cites *Vasquez v. County of Los Angeles*, 349 F.3d 634 (9th

Cir. 2002).  In *Vasquez*, the plaintiff relied primarily on statements by the defendant "that Vasquez had 'a typical Hispanic macho attitude' and that he should consider transferring to the field because 'Hispanics do good in the field.'"  *Id.* at 642.  The Ninth Circuit held that "[t]wo isolated offensive remarks, combined with Vasquez's other complaints about unfair treatment" were "not severe or pervasive enough to create a hostile work environment."  *Id.* at 644.  Similarly, in *Manatt v. Bank of America*, 339 F.3d 792 (9th Cir. 2003), a woman of Chinese origin overheard jokes that included the phrase "China man" and other references to China and communism, but "on only a couple of occasions did [her] co-workers or supervisor direct their racially insensitive 'humor' at [the plaintiff]."  *Id.* at 798-99.  The Ninth Circuit held that these racial comments were neither pervasive nor severe.  *Id.* at 798-99.

Boeing also cites several district courts, which have concluded on the facts of those cases that the alleged conduct was not severe or frequent enough to support a workplace harassment claim.  (MTD at 10-11.)  For example, in *Abdullah-El v. Bon Appetit Management Co.*, No. C15-1946JLR, 2016 WL 1756630 (W.D. Wash. May 3, 2016), the court dismissed a claim for sexual harassment because allegations of "several remarks and gestures that may have had sexual overtones," including that one co-worker pressed against the plaintiff, that another called him "honey," and that a third—who appeared to be high on drugs—"sniffed in the area of [the plaintiff's] testicles," were insufficiently severe or pervasive to alter the terms of the plaintiff's employment.[5]  *Id.* at

---

[5] In evaluating Title VII claims, the Supreme Court has acknowledged the propriety of drawing on and "harmonizing" the standards for both racial and sexual harassment.  *Faragher*,

*1, *4-5. Similarly, Boeing cites *Washington v. Lowe's HIW Inc.*, 75 F. Supp. 3d 1240 (N.D. Cal. 2014), in which the court dismissed a hostile work environment claim as insufficiently severe or pervasive that alleged co-workers targeted the plaintiff with various non-sex based "workplace annoyances," made sexual comments to other customers and employees, "gave [the plaintiff] a 'dirty look' and walked closely behind her," and would "talk about female associates." *Id.* at 1251-52 n.8. Finally, Boeing relies on *Mendoza v. Sysco Food Services of Arizona*, 337 F. Supp. 2d 1172 (D. Ariz. 2004). In *Mendoza*, the court granted summary judgment on a hostile work environment as insufficiently severe or pervasive that involved four instances of discrimination based on the plaintiff's Mexican national origin occurring within five months, which included stereotypical remarks made after the plaintiff killed a rat, a cartoon depicting rats having sex with a deceased rat, a supervisor's remarks regarding Mexican employees' unreliability, and a co-worker's complaint about a Mexican music station. *Id.* at 1188, 1190.

The court agrees that the frequency of relevant incidents Mr. Caldwell alleges is similar to—or only marginally greater than—the frequency of incidents alleged in the district court cases Boeing cites; and the court also agrees that this level of frequency ordinarily would not support a claim for workplace harassment. Nevertheless, the severity Mr. Caldwell's allegations is greater the allegations in the cases on which Boeing

524 U.S. at 787 n.1. The court, therefore, may look to 42 U.S.C. § 1981 or Title VII cases involving both racial and sexual harassment in evaluating the present claim. *See Martinez v. Marin Sanitary Serv.*, 349 F. Supp. 2d 1234, 1251 (N.D. Cal. 2004).

relies.  For example, there are no instances of physical threats in the cases Boeing cites.[6]

(*See* MTD at 10-11.)  Yet, Mr. Caldwell alleges that a Boeing security officer

"approached [his] car in a semi crouched position with his hand on his weapon."  (SAC

¶ 15.)  The court has little difficulty concluding that a reasonable African-American man

would view the officer's alleged actions as physically threatening.  Similarly, Mr.

Caldwell alleges that after being reprimanded for swearing on Boeing's basketball court

and agreeing to leave, Mr. Anderson nevertheless blocked Mr. Caldwell's exit and called

Boeing police officers to respond.  (*Id.* ¶ 19.)  Again, the court concludes that a

reasonable African-American would view Mr. Anderson's response as an overwrought

threat to use physical force in response to a minor, non-violent dispute.

Courts have found racially-charged verbal harassment combined with physical

threats sufficient to support a claim for workplace harassment.  For example, in *Vance v.*

*Southern Bell Telephone & Telegraph Co.*, 863 F.2d 1503, 1510-11 (11th Cir. 1989), the

Eleventh Circuit concluded that two incidents in which a noose was hung at an African

American employee's work station were sufficiently severe to establish a hostile work

environment claim.  Similarly, in *Martinez v. Marin Sanitary Service*, the district court

found that the use of a racial epithet in combination with a threat to kill the plaintiff

"counsels that the alleged racial harassment rises to the level necessary objectively to

alter the terms of [the plaintiff's] employment."  349 F. Supp. 2d at 1253-54.  The court

---

[6] In *Abdullah-El*, the plaintiff alleged that one of his co-workers pressed against him.  *See* 2016 WL 1756630, at *1.  This alleged behavior, although inappropriate, is distinct from either an implied or express threat of physical force.

recognizes that Mr. Caldwell's allegations involving a Boeing security officer and Mr. Anderson are different from a threat of physical violence by a co-worker or the hanging of a noose.  (*See* SAC ¶¶ 15, 19.)  But the court also recognizes that it must view the allegations from the perspective of a reasonable African-American man, and a reasonable African-American man would view the crouched approach of an officer with his hand on his service weapon as physically threatening and would also view calling police in response to an otherwise minor, nonviolent dispute as an attempt to intimidate or threaten with a show of physical force.  (*See id.*)  Accordingly, the court views Mr. Caldwell's allegations as more severe than those in cases Boeing cites.

The court also considers whether the alleged behavior is publicly humiliating.  *See Johnson*, 534 F.3d at 1122.  The court has no trouble concluding that a reasonable African American would consider the denial of access to a drinking fountain and being publicly mocked by a fellow employee imitating the behavior of an ape to be deeply humiliating and permeated with racial animus.  (*See id.* ¶¶ 16, 20.)  Thus, the humiliating nature of the alleged conduct also supports the court's conclusion that Mr. Caldwell has sufficiently alleged workplace harassment based on his race.

Although the frequency of the alleged incidents is similar to the cases cited by Boeing, the severity in terms of physical threats and public humiliation is greater.  The court acknowledges that Mr. Caldwell's allegations may not rise to the level of harassment presented by some Ninth Circuit cases.[7]  Nevertheless, the court cannot

_____

[7] *See, e.g.*, *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 817 (9th Cir. 2002) (finding that a Korean plaintiff suffered national origin harassment where the employer verbally and physically

conclude that Mr. Caldwell's allegations fall within the category of non-actionable "simple teasing" or "offhand comments." *See Manatt*, 339 F.3d at 798. Instead, Mr. Caldwell's allegations "fall along a continuum" and—viewed as a whole and from the perspective of a reasonable African American—are sufficient to state a claim for workplace harassment based on race. *See Nickelberry*, 2010 WL 11459932, at *7 ("While [the defendant's] actions clearly do not rise to the level of harassment presented by [some Ninth Circuit] cases, the Court finds that they were not isolated or diffused as the harassment in *Manatt* or *Vasquez*[, but rather] . . . fall[] along a continuum . . . [and present] a triable issue regarding whether some of [the defendant's] comments were race-based and the severity of [the defendant's] comments, viewed as a whole.").

Accordingly, the court denies Boeing's motion to dismiss Mr. Caldwell's Title VII claim for workplace harassment based on race in count two of the second amended complaint.

    2. <u>Hostile Work Environment Based on Retaliation for Engagement in a Protected Activity</u>

        In addition to a claim for workplace harassment based on race, Mr. Caldwell also alleges workplace harassment based on retaliation. (*See* SAC ¶ 31 ("Defendants violated [the] prohibition on discriminatory and harassing acts or omissions based on race and

---

abused the plaintiff because of his race); *Nichols v. Azteca Rest. Enters*., 256 F.3d 864, 872-73 (9th Cir. 2001) (finding a hostile work environment where a male employee was called "faggot" and "fucking female whore" by co-workers and supervisors at least once a week and often several times per day); *Anderson v. Reno*, 190 F.3d 930 (9th Cir. 1999) (finding a hostile work environment where a supervisor repeatedly referred to the employee as "office sex goddess," "sexy," and "the good little girl" and where he humiliated the employee in public by drawing a pair of breasts on an easel while the employee was making a presentation and then told the assembled group that "this is your training bra session," and where the employee received vulgar notes and was patted on the buttocks and told she was "putting on weight down there").

engaging in the protected activity of making and filing complaints and grievances as to the discriminatory treatment he received from Defendants.").)  Boeing also moves to dismiss this claim.  (MTD at 11-13.)

To state a prima facie claim for retaliation under federal law, Mr. Caldwell must allege: (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there was a causal link between his protected activity and the adverse employment action.  *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1065-66 (9th Cir. 2003).  A hostile work environment may form the basis for a retaliation claim under Title VII.  *Ray*, 217 F.3d at 1244-45.  "Harassment for engaging in a protected activity . . . is the paradigm of adverse treatment that is based on retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity."  *Id*. at 1245 (internal quotation marks and citation omitted).  Thus, in a workplace harassment claim based on engagement in a protected activity, the second prong of the traditional retaliation claim—an adverse employment action or decision—is supplied by allegations of a hostile work environment.  *See id.*; *Moore*, 2005 WL 2898065, at *2.

With regard to the first element of his claim, Mr. Caldwell alleges several instances in which he complained to his supervisors about the conduct of his co-workers. For example, he emailed his manager, Mr. Bogardus, about the March 2016 incident in which Boeing's gym recreation administrator, Mr. Anderson, called Boeing police officers after Mr. Caldwell swore on Boeing's basketball court.  (SAC ¶ 19.)  He also alleges that he told Mr. Bogardus about the December 2016 incident in which a co-worker mocked him by imitating the movements of an ape.  (*Id.* ¶ 20.)  In addition, he

informed Mr. Bogardus that Mr. Hammond was harassing him.  (*Id.* ¶ 21.)  Finally, he

alleges that reported Mr. Jarvis's conduct to his manager, Ms. Weatherbee.  (*Id.* ¶ 22.)

Although the court need not decide the issue here, these acts of reporting alleged

incidents of racial harassment may constitute protected activities—thereby satisfying the

first element of Mr. Caldwell's prima facie claim for workplace harassment based on

retaliation.  *See Ray*, 217 F.3d at 1240 n. 3 ("Making an informal complaint to a

supervisor is . . . a protected activity."); *Sloan v. Eugene Burger Corp.*, No.

3:12-CV-00336-MMD, 2014 WL 794222, at *5 (D. Nev. Feb. 26, 2014) ("There is no

dispute that Plaintiff's reporting sexual harassment was a protected activity . . . .").  In

addition, with respect to the second element of his prima facie claim, the court has

already concluded that Mr. Caldwell pleads sufficient facts of a hostile work environment

to withstand a motion to dismiss.  *See supra* § III.B.1.

      Mr. Caldwell, however, fails to sufficiently plead the third element of this claim—

a causal link between the hostile work environment he asserts and his engagement in

alleged protected activity.  *See Stegall*, 350 F.3d at 1065-66.  Even assuming Mr.

Caldwell's reports to his supervisors constitute a protected activity, Mr. Caldwell's

second amended complaint provides insufficient causal links between his reports and the

alleged harassment he experienced.  (*See generally* SAC.)  With one exception, which the

court addresses below, Mr. Caldwell never alleges that any of his harassers knew or had

any reason to know about his engagement in any protected activity.  (*See generally* SAC.)

The failure to allege any such connection is fatal to Mr. Caldwell's claim.  *See Raad v.*

*Fairbanks N. Star Borough School Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003) (stating

that the plaintiff must make some showing that the defendant was aware of the alleged protected activity).

The single link Mr. Caldwell alleges is when he asserts that his manager, Mr. Bogardus, "joined in on the racial intimidation when [Mr. Caldwell] informed him that Tom Hammond . . . was harassing him." (*Id.* ¶ 21.) This single allegation, however, cannot support Mr. Caldwell's claim for a hostile work environment based on retaliation. First, the allegation is too generalized and conclusory for the court to credit. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (stating that, on a motion to dismiss, the court is not "required to accept as true allegations that are merely conclusory"). Indeed, Mr. Caldwell never describes how or when Mr. Bogardus harassed him. (*See id.*) But even if the allegation concerning Mr. Bogardus was not too generalized, a single incident of harassment will not support a workplace harassment claim unless it is "extremely severe." *Brooks*, 229 F.3d at 926 ("If a single incident can ever suffice to support a hostile work environment claim, the incident must be extremely severe."); s*ee Al-Dabbagh v. Greenpeace, Inc*., 873 F. Supp. 1105, 1111 (N.D. Ill. 1994) (holding that a single incident was sufficient to support a hostile work environment claim where the assailant "slapped [the plaintiff], tore off her shirt, beat her, hit her on the head with a radio, choked her with a phone cord and ultimately forced her to have sex with him"). There is nothing in Mr. Caldwell's second amended complaint to indicate that Mr. Bogardus's harassment of Mr. Caldwell even approached this threshold.

Although Mr. Caldwell's second amended complaint lacks express allegations of causation, "in some cases, causation can be inferred from timing alone where an adverse

employment action follows on the heels of protected activity." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002). The adverse employment action, however, must occur "fairly soon after the employee's protected expression." *Id.* (quoting *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1009-10 (7th Cir. 2000)). Further, although the Ninth Circuit cautions against adopting a bright-line rule, *see Anthoine v. N. Cent. Ctys. Consortium*, 605 F.3d 740, 751 (9th Cir. 2010), the Court also has repeatedly found that durations of four months and greater between the protected activity and adverse employment action are too remote to support a finding of causation based on temporal proximity alone. *See id.* (citing cases and noting that periods as short as four months were "too long" to support a causal inference); *see also Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) (explaining in the context of a Title VII claim that "cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close'"); *Cox v. Wal-Mart Stores Inc.*, 441 F. App'x 547, 551 (9th Cir. 2011) ("Here, [the plaintiff] was terminated more than seven months after she invoked the workers' compensation system. That fact, without more, does not support an inference of retaliatory motive.").

The earliest that Mr. Caldwell alleges that he reported any harassment to a superior was in March 2016. (*See* SAC ¶ 19.) Thus, the court cannot reasonably infer that any incident of alleged harassment prior to March 2016 occurred as a result of retaliation for Mr. Caldwell's reporting. (*See id.* ¶¶ 15-18 (alleging incidents that

occurred prior to March 2016).)  The only incident that Mr. Caldwell specifically alleges

occurred after March 2016 was the December 2016 incident in which a co-worker

"mock[ed] [Mr. Caldwell] by walking . . . like an ape."  (*See id.* ¶ 20.)  Because this event

did not occur "on the heels" of Mr. Caldwell's report to Mr. Bogardus but rather nine

months later, the court declines to infer causation based on Mr. Caldwell's allegations of

timing alone.  *See Villiarimo*, 281 F.3d at 1065.  Further, Mr. Caldwell did allege any

time period regarding Mr. Hammond's or Mr. Jarvis's alleged harassment.  (*See* SAC

¶¶ 21-22.)  Accordingly, the court cannot infer causation based on the timing of Mr.

Caldwell's reporting allegations for these alleged incidents either.  In sum, the court

concludes that Mr. Caldwell fails to plead sufficient facts linking the alleged harassment

in his second amended complaint to any alleged protected activity.  As a result, the court

grants Boeing motion to dismiss his claim for workplace harassment based on retaliation

in count two of the second amended complaint.

**C.     Intentional Infliction of Emotional Distress**

The court also dismisses Mr. Caldwell's claim for intentional infliction of

emotional distress, which is also known at the tort of outrage.  (*See* SAC ¶¶ 33-38.)  The

elements of the tort of outrage are (1) extreme and outrageous conduct; (2) intentional or

reckless infliction of emotional distress; and (3) severe emotional distress on the part of

the plaintiff.  *Reid v. Pierce Cty.*, 961 P.2d 333, 337 (Wash. 1998).  Here, Mr. Caldwell

fails to plead the third element.  Mr. Caldwell's conclusory allegation that he "suffered

humiliation, mental anguish, emotional, and physical distress manifesting itself in such

physical symptoms [as a] general stress induced change in appearance and temperament"

is insufficient.  The court need not accept these generalized allegations as true.  *Iqbal*,

556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice.").  At most, Mr. Caldwell alleges that he

"went to work every day expecting to be fired."  (SAC ¶ 24.)  But "expecting to be

fired"—even every day—does not necessarily equal suffering "severe emotional

distress."  Accordingly, the court concludes that Mr. Caldwell fails to adequately plead

the third element of his outrage claim.

Even if Mr. Caldwell had properly pleaded all the elements of outrage, the court

would still dismiss his claim.  "Washington courts have held that common law tort

claims, such as negligent infliction of emotional distress, negligent supervision, and

intentional infliction of emotional distress . . . , [which] are based on the same facts

underpinning a plaintiff's claim for unlawful discrimination, are duplicative of the

discrimination claim and therefore must be dismissed."  *Ellorin v. Applied Finishing,*

*Inc.*, 996 F. Supp. 2d 1070, 1093 (W.D. Wash. 2014) (citing *Francom v. Costco*

*Wholesale Corp.*, 991 P.2d 1182, 1192-93 (Wash. Ct. App. 2000) (holding that the trial

court properly dismissed claims for negligent infliction of emotional distress and

negligent supervision or retention where those claims relied on the same underlying facts

supporting the plaintiff's discrimination claim); *Haubry v. Snow*, 31 P.3d 1186, 1193

(Wash. Ct. App. 2001) (ruling that an employee may recover damages for emotional

distress in an employment context but only if the factual basis for the claim is distinct

from the factual basis for the discrimination claim); *Anaya v. Graham*, 950 P.2d 16, 20

(Wash. Ct. App. 1998) (affirming the trial court's dismissal of an outrage claim because

it "duplicates the discrimination claim")). Such claims "only arise[] when the claim is based on a separate factual basis from the . . . discrimination claim." *Haubry*, 31 P.3d at 1193; *see also Marable v. Nitchman*, 262 F. App'x 17, 21 (9th Cir. 2007) (affirming the trial court's dismissal of the plaintiff's claim for negligent infliction of emotional distress because it "had no factual basis independent from his general workplace discrimination claim"). Identical allegations underpin both Mr. Caldwell's Title VII discrimination claims and his outrage claim. (*See generally* SAC.) Accordingly, the court grants Boeing's motion and dismisses Mr. Caldwell's claim for intentional infliction of emotional distress or outrage.

**D.      Leave to Amend**

As a general rule, when a court grants a motion to dismiss, the court should dismiss the complaint with leave to amend. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003) (citing Fed. R. Civ. P. 15(a)). The policy favoring amendment is to be applied with "extreme liberality." *Id.* at 1051. In determining whether dismissal without leave to amend is appropriate, courts consider such factors as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowing the amendment, and the futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). But "[a]bsent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence*, 316 F.3d at 1052.

The court determines that leave to amend is warranted. There is no evidence of undue delay, bad faith, or dilatory motive on Mr. Caldwell's part, nor is there any indication that Boeing will suffer prejudice if the court permits amendment. *See Foman*, 371 U.S. at 182. Although Mr. Caldwell has amended his complaint once in response to Boeing's first motion to dismiss and once by stipulation of the parties, those amendments were not in response to the court's determination of pleading deficiencies. (*See generally* Dkt.) Accordingly, the court grants Mr. Caldwell leave to amend his second amended complaint within 14 days of the filing date of this order. The court cautions Mr. Caldwell that the court will treat his failure to timely amend his second amended complaint, or his failure to remedy the deficiencies identified herein, as evidence of the futility of further amendment. Accordingly, either failure may result in the dismissal of his claims for a hostile work environment based on engagement in a protected activity and for the intentional infliction of emotional distress with prejudice and without further leave to amend.

## IV.    CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part Boeing's motion to dismiss portions of Mr. Caldwell's second amended complaint (Dkt. # 25). Specifically, the court DENIES the portion of Boeing's motion seeking dismissal of Mr. Caldwell's claim for workplace harassment or a hostile work environment based on race under Title VII. However, the court GRANTS the portion of Boeing's motion seeking the dismissal of Mr. Caldwell's claims for (1) workplace harassment or a hostile work environment based on Mr. Caldwell's engagement in a protected activity under

Title VII, and (2) the intentional infliction of emotional distress or the tort of outrage; and the court DISMISSES those claims. The court, nevertheless, GRANTS Mr. Caldwell leave to amend his second amended complaint to correct the deficiencies described herein within 14 days of the filing date of this order.

Dated this 8th day of May, 2018.

JAMES L. ROBART
United States District Judge