THE HONORABLE JAMES L. ROBART

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| BRETT CALDWELL, an individual,<br><br>Plaintiff,<br><br>v.<br><br>THE BOEING COMPANY, a Delaware Corporation and DOES 1–10,<br><br>Defendant. | Case No. 2:17-cv-01741-JLR<br><br>**DEFENDANT THE BOEING COMPANY'S REPLY BRIEF IN SUPPORT OF BOEING'S MOTION FOR SUMMARY JUDGMENT**<br><br>NOTE ON MOTION CALENDAR: FEBRUARY 15, 2019 |

## I. INTRODUCTION

The undisputed record evidence before the Court establishes the following: The Boeing Company terminated Brett Caldwell after determining through an independent investigation that he was spending almost half his work time surfing the Internet. Boeing's written policies provide that misuse of the Internet for more than 20% of an employee's working hours results in termination, and Boeing has terminated *hundreds* of other employees—*the majority of whom were White*—for Internet usage less egregious than Caldwell's. In Caldwell's specific case, the termination decision was reached by an Employee Corrective Action Review Board ("ECARB") where *no member who voted to terminate Caldwell knew his race*.

Caldwell's opposition brief concedes—either explicitly or through silence—*all* of these key material facts. Rather than engage the factual record and controlling law, Caldwell relies on inflammatory assertions and an exaggerated declaration in an attempt to distract the Court and avoid summary judgment through sheer volume and theatrical embellishment. The Court should not be fooled by this tactic. Application of the governing law to the undisputed facts reveals that Caldwell can neither make a prima facie case of discrimination nor demonstrate that Boeing's legitimate reason for his termination was a pretext for intentional race discrimination.

Caldwell's strategy fares no better for his hostile-work-environment claim. Lost in the midst of his overheated allegations is the fact that he has conceded the vast majority of Boeing's arguments. These arguments include that: (1) nearly all of Caldwell's hostile-work-environment claims are untimely and cannot comprise a continuing violation; (2) even if timely, Caldwell's allegations are predicated on coworker misconduct, which cannot be imputed to Boeing; (3) Caldwell cannot sustain a hostile-work-environment claim based on race-neutral allegations; and (4) even Caldwell's allegations that are arguably based on race fail because they do not rise to the level required by case law.

For all of these reasons—and those presented below and in Boeing's opening brief—the Court should grant Boeing's motion, and dismiss Caldwell's case, in its entirety, with prejudice.

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT (No. 17-1741 JLR)- 1

**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
+1.202.739.3000

## II. ARGUMENT AND AUTHORITIES

### A. Caldwell's Discrimination Claim Fails as a Matter of Law.

#### 1. Caldwell Has Failed to Demonstrate A Prima Facie Case Of Discrimination.

Boeing demonstrated in its opening brief that Caldwell cannot meet the second and fourth prima facie requirements of his discrimination claim (*See* Dkt. No. 47 at 13-15), and Caldwell has failed to dispute either point with admissible record evidence.

First, Caldwell has not established that he performed satisfactorily for Boeing. His only attempt to make this required threshold showing is a one-sentence assertion that he "produced competent evidence that he was a 'good worker' who performed competently during his career at Boeing." (Dkt. No. 59 at 16). This argument, even if assumed to be true, is beside the point. Regardless of whether or not Caldwell was a technically skilled employee, he was also—by his own admission—an employee who wasted hours every day perusing social media sites, watching YouTube videos, and reading car and real estate listings. (*See* Dkt. No. 47 at 13). Tellingly, Caldwell's Opposition does not dispute (or even address) that: (1) he admitted—both during his deposition and in an earlier statement provided to Boeing investigators—that he spent a sizeable amount of work time surfing the Internet for personal reasons; (2) that an independent corporate investigation concluded that he spent 43% of work time surfing the Internet for personal reasons; and (3) that his computer usage violated Boeing's written policies concerning misuse of Company time. (*Id.* at 4–7, 13).[1] Accordingly, even if Caldwell was a "good worker," the undisputed fact that he spent nearly half his time using the Internet for personal reasons demonstrates that he cannot meet his prima facie burden of showing that he was performing satisfactorily. This fact, standing alone, warrants summary judgment for Boeing. (*See id.* at 14).

---

[1] As this Court has found repeatedly, failing to respond to a moving party's arguments constitutes grounds for granting a motion for summary judgment. *See, e.g.*, *Colman v. City of Seattle*, No. C05-0754RSM, 2006 WL 1842978, at *4 (W.D. Wash. June 30, 2006) (finding plaintiff "concede[d] summary judgment [was] appropriate" on certain claims by "fail[ing] to respond to" arguments in moving party's brief); *Armstrong v. Cty. of Kitsap*, No. 04-cv-5461, 2006 WL 3192518, at *6 (W.D. Wash. Nov. 2, 2006) (similar).

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT (No. 17-1741 JLR) - 2

MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
+1.202.739.3000

Second, Caldwell has not established that employees outside his protected class were treated more favorably. Although Caldwell asserts (while citing no evidence) that he was "the only employee terminated for [excessive Internet usage]" (Dkt. No. 59 at 16), he unashamedly ignores the undisputed evidence that Boeing has terminated *hundreds* of employees for similar Internet-use violations. As Boeing highlighted in its opening brief—and Caldwell concedes through non-response in his opposition brief—the undisputed factual record shows that: (1) Boeing has terminated more than 200 employees, including 137 White employees, for similar misconduct; (2) Boeing has terminated more than eight times as many White employees than African American employees for similar misconduct; and (3) Boeing has terminated over 80 White employees for time misusage less egregious than Caldwell's. (*See* Dkt. No. 47 at 8–9, 14).[2] These undisputed facts provide another standalone reason to enter summary judgment in Boeing's favor.

Likely realizing that the undisputed facts show that he was treated the same as non-African American employees, Caldwell attempts to change the subject in two ways. First, he argues that certain of his coworkers engaged in similar misconduct but were not disciplined. (Dkt. No. 59 at 17-18). This argument is a complete red herring, however, because it is undisputed that Boeing terminated hundreds of non-African American employees for similar offenses. Even if Boeing inadvertently failed to discipline select coworkers of Caldwell, that would demonstrate only an administrative miscue—it would do nothing to establish that Caldwell was treated differently than other employees because of his race. In addition, Caldwell's argument ignores that his cherry-picked comparators were not similar to him "in all material respects" because Boeing was unaware of those individuals' alleged Internet misusage. Unlike with Caldwell—where Boeing was aware of his Internet usage due to an anonymous ethics complaint (Dkt. No. 47 at 5)—there is no evidence showing that Boeing had knowledge of Caldwell's coworkers' alleged time misusage.

---

[2] During his deposition, Caldwell admitted that he "had no clue" either that Boeing had terminated other employees for excessive Internet use or about the races of the individuals terminated. (Dkt. No. 47 at 14).

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT (No. 17-1741 JLR) - 3

**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
+1.202.739.3000

1  This lack of evidence is fatal to Caldwell's argument. *See, e.g.*, *Chavez v. Casas Christian Preschool*, No. CV-11-177, 2012 WL 2091641, at *6 (D. Ariz. May 9, 2012), *report and recommendation adopted*, No. CV 11–177–TUC–FRZ (BPV), 2012 WL 2092153 (D. Ariz. June 11, 2012) (finding no similarly situated employee where, even though plaintiff witnessed a comparator's violation, the "alleged misconduct was not brought to the [employer's] attention").[3]

Caldwell also attempts to paint an inference of racial discrimination by referencing the entire universe of his allegations against Boeing. (Dkt. No. 59 at 16–17).[4] This approach fails because Caldwell has proffered no evidence touching upon the decision to terminate his employment. None of Caldwell's allegations of racial discrimination involve the individuals who voted to terminate his employment during the ECARB process. Caldwell cannot use the alleged remarks or actions of non-decision-makers to establish an inference of discrimination, as courts routinely hold that there must be a connection between any alleged remark and the adverse employment decision. *See*, *e.g.*, *Habib v. Tote Servs.*, No. C14-1685RSL, 2017 WL 108553, at *7 (W.D. Wash. Jan. 11, 2017), *aff'd*, 699 F. App'x 759 (9th Cir. 2017) (granting summary judgment as to plaintiff's discriminatory termination claim where plaintiff failed to offer "any evidence of bigotry" by relevant decision-maker and was able to rely only on the "racist and Islamophobic views" of select coworkers, which the court found did not motivate plaintiff's termination).[5]

---

[3] *See also*, *e.g.*, *Jagessar v. Walgreen Co.*, No. 13-21575-CIV, 2014 WL 1092370, at *10 (S.D. Fla. Mar. 19, 2014) (entering summary judgment where plaintiff did not offer evidence that employer knew of or investigated coworkers for the same misconduct as plaintiff and treated them more favorably); *Jackson v. Blockbuster, Inc.*, No. 4:09-CV-119, 2010 WL 2268086, at *5 (E.D. Tex. June 4, 2010) (finding no prima facie case where plaintiff failed to submit any evidence that alleged comparators were reported to the employer); *Buenrostro v. Gonzales*, No. CV0606814SJOSHX, 2008 WL 11365219, at *2 & n.1 (C.D. Cal. Aug. 29, 2008), *aff'd sub nom. Buenrostro v. Holder*, 408 F. App'x 72 (9th Cir. 2011) (finding plaintiff provided no evidence of similarly-situated employees, and rejecting plaintiff's "entirely conclusory" testimony that complaints about certain employees were not investigated).

[4] As was shown in Boeing's opening brief, and is discussed further below, Caldwell's allegations of a hostile work environment fail for a number of reasons. (*See infra* Sec. II.B., pp. 7–12).

[5] *See also*, *e.g.*, *DeHorney v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 879 F.2d 459, 468 (9th Cir. 1989) ("If remarks are offered as evidence of discriminatory intent, they must either be those made by the decision-

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT (No. 17-1741 JLR) - 4

MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
+1.202.739.3000

## 2. **Caldwell Has Not Shown That Boeing's Legitimate, Non-Discriminatory Reason For Terminating Him Was Pretextual.**

Even if Caldwell could successfully make a prima facie case (which he cannot), he has not shown that Boeing's legitimate, non-discriminatory reason for his termination was pretextual.

As an initial point—and as noted above—Caldwell does not dispute that he spent work time surfing the Internet, and that an independent corporate investigation concluded that his improper Internet usage comprised 43% of his total work time. (*See supra* Sec. II.A.1., p. 2).[6] It is black letter law that these undisputed facts establish a legitimate, non-discriminatory, and non-pretextual reason for Caldwell's termination. *See*, *e.g.*, *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 932–35 (8th Cir. 2006) (finding termination nondiscriminatory where it was "based upon [plaintiff's] excessive and inappropriate use of the Internet"); *Delgado v. Combs*, No. A-09-CA-571-SS, 2010 WL 3909398, at *5–7 (W.D. Tex. Sept. 28, 2010) (granting summary judgment for "excessive internet use"); *accord Mitchell v. Super. Ct. of Cal. Cty. of San Mateo*, 312 F. App'x 893, 894 (9th Cir. 2009) (holding that plaintiff failed to adduce evidence of pretext for employer's legitimate investigation; although the plaintiff noted technical issues with an independent report, she had no evidence to indicate a biased investigation, that the employer knew of any errors, or that the employer acted with discriminatory animus); *Batista v. Stewart Enters., Inc.*, 126 F. App'x 767, 770 (9th Cir. 2005) (affirming district court decision where plaintiff failed to show any pretext because he had no evidence of an alleged "sham" investigation).

Furthermore, Caldwell does not dispute—thereby conceding—that: (1) his termination was decided through the formal, impartial ECARB process; (2) Dean Bogardus (whom Caldwell

---

maker herself or Plaintiff must show a sufficient nexus between the remarks and the decision-makers' subsequent employment decisions. There is not a sufficient nexus unless the employee in question is substantially involved in the employment action." (internal citations omitted)); *Orum v. Chertoff*, No. C05-00795, 2007 WL 4593497, at *6 (N.D. Cal. Dec. 28, 2007) (finding that the record lacked evidence that the employee who made discriminatory remark was a decision-maker or that the employee "relayed his alleged knowledge of Plaintiff's race, or any bias related to Plaintiff's race" to the decision-maker).

[6] Caldwell also does not attempt to discredit Boeing's investigation of his Internet usage.

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT (No. 17-1741 JLR) - 5

**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
+1.202.739.3000

accuses of discriminatory acts) actually voted *against* termination; and (3) that the ECARB members who voted to terminate Caldwell had never met him and were not told his race. (Dkt. No. 53 ¶ 3; Dkt. No. 49 ¶ 15; Dkt. No. 63, Supplemental Declaration of Michael Edmiston ¶¶ 1–3).[7] In other words, *the decision-makers responsible for Caldwell's termination did not know his race when they voted to terminate him.* (*Id.*). This undisputed fact—on its own—is a complete barrier to any finding of pretext, and requires entry of summary judgment for Boeing. *See*, *e.g.*, *Robinson v. Adams*, 847 F.2d 1315, 1316–17 (9th Cir. 1987) (finding no discrimination where decision-makers were unaware of plaintiff's race, and plaintiff offered no evidence to call their credibility into question); *Kwesele v. King Cty.*, No. 2:17-CV-1426-RAJ, 2019 WL 266450, at *9 (W.D. Wash. Jan. 18, 2019) (finding that plaintiff failed to establish pretext because he was unable to show how adverse employment action was "motivated by racial animus from the relevant decision-makers."); *Nguyen v. Walgreen Corp.*, No. 08-1931, 2010 WL 11595838, at *6 (C.D. Cal. May 17, 2010) (granting summary judgment where plaintiff did not show "the existence of any discriminatory animus" by any of the relevant decision-makers).

Rather than address the core arguments set forth in Boeing's motion, Caldwell attempts to distract the Court by misrepresenting the factual record and misstating the applicable legal principles. First, Caldwell asserts that his admitted Internet misusage "did not violate any of Boeing's rules." (Dkt. No. 59 at 1). This assertion is particularly brazen given the undisputed evidence showing that Boeing's policies provide that personal use of the Internet for more than 20% of an employee's work time typically results in termination. (Lewis Decl., Dkt. No. 52, ¶ 10; Misuse/Mischarging ECARB Guidelines, Dkt. No. 52-7; Caldwell Dep., Dkt. No. 48-1, at 132:17–133:6). Indeed, Boeing's policy concerning time-abuse discipline explicitly provides that

---

[7] Caldwell's opposition makes no attempt to identify whom he believes were the discriminatory decision-makers responsible for his termination. This is surely because he has presented zero evidence that any of the decision-makers based their termination decision on his race or any other insidious reason.

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT (No. 17-1741 JLR) - 6

**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
+1.202.739.3000

discharge considerations include "[greater than] 20% of time either in a block of time or a pattern over a longer period of time." (Misuse/Mischarging ECARB Guidelines Dkt. No. 52-7).

Second, Caldwell repeats his argument that select coworkers were not disciplined for their personal use of the Internet. As explained in detail above, this argument fails because: (1) the undisputed record evidence shows that hundreds of non-African American employees were terminated for the same or lesser conduct as Caldwell; and (2) Caldwell has not shown that Boeing had knowledge of his coworkers' alleged Internet misuse. (*See supra* II.A.1., at pp. 3–4).

Third, Caldwell contends that "Boeing's witnesses testified inconsistently as to the real reason for [his] termination." (Dkt. No. 59 at 19). This misleading argument is based upon testimony from Tom Hammond, a non-managerial employee who took no part in the ECARB process and had no knowledge of the investigation. It defies credulity to suggest that Boeing's explanations for Caldwell's termination are inconsistent due to the testimony of an individual who was in no way involved in the termination and whose speculative, gossipy testimony on that subject is textbook hearsay.[8]

In sum, Caldwell has not presented any specific evidence—as opposed to innuendo and speculation—and has not come close to his ultimate burden of showing that Boeing's stated reason for his termination was pretextual. For this reason, the Court should grant Boeing's motion and enter summary judgment on Caldwell's discrimination claim.

**B.   Caldwell's Hostile-Work-Environment Claim Fails as a Matter of Law.**

Perhaps realizing the fatal flaws in his discrimination claim, Caldwell devotes a sizeable portion of his opposition brief to a laundry list of allegations purportedly supporting his hostile-work-environment claim. In doing so, however, Caldwell blatantly ignores the majority of

---

[8] Caldwell also argues that Bogardus did not believe that Caldwell should have been terminated (Dkt. No. 59 at 20), but this personal opinion is irrelevant to the legality of the termination. As noted above, Bogardus voted against terminating Caldwell while other members of the ECARB (who did not know Caldwell's race) voted for termination. This difference of opinion shows fair process, not discrimination.

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT (No. 17-1741 JLR) - 7

MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
+1.202.739.3000

Boeing's legal arguments. Caldwell appears to hope that the Court will be overwhelmed by the sheer number of his allegations and disregard both Boeing's legal arguments and the factual record. The Court should decline this invitation. For the reasons provided below, Caldwell's hostile-work-environment claim fails as a matter of law, and summary judgment should be entered for Boeing.

### 1. **Caldwell Concedes That The Vast Majority Of His Allegations Are Time-Barred.**

To start, Caldwell has ignored the central aspects of Boeing's argument that his hostile-work-environment claim is time-barred under binding Ninth Circuit authority. Although the parties agree that otherwise untimely allegations can sometimes constitute "continuing violations" under *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), Caldwell fails to address that otherwise untimely acts cannot form a single unlawful practice if the untimely acts: (1) did not consist of the "*same type* of employment actions"; (2) did not "occur[] *relatively frequently*"; or (3) "were [not] perpetrated by the *same managers*." *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 893 (9th Cir. 2005) (emphases added) (citations omitted). Here, Caldwell's opposition does not refute—thereby conceding—Boeing's argument that his allegations involve temporally intermittent acts that differ in type and were taken by different employees. These types of allegations cannot support a "continuing violation" theory, and the Court should not consider any allegation arising before October 21, 2016. (*See* Dkt. No. 47 at 17–21).

In addition, Caldwell's opposition ignores the hornbook principle that any change in job location—even for the same employer—breaks up an alleged continuing violation. Caldwell argues that "he was working for Boeing" at all his various sites (Dkt. No. 59 at 22), but this unsupported assertion does nothing to address the numerous cases cited in Boeing's opening brief. Those cases stand for the express proposition that a change in job location *for the same employer* eliminates a continuing violation theory. (*See* Dkt. No. 47 at 20–21). By conceding this point, Caldwell has also conceded that any allegations concerning Boeing's Frederickson location are untimely and may not be considered.

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT (No. 17-1741 JLR) - 8

**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
+1.202.739.3000

### 2. Even if Caldwell's Claims Were Timely, It Is Undisputed That No Liability Imputes to Boeing.

Even if Caldwell's hostile-work-environment claim were timely—which it is not—it is still legally deficient because: (1) the overwhelming majority of his allegations concern actions taken by coworkers (not managers); and (2) the conduct of those coworkers cannot be imputed to Boeing. Caldwell's opposition does not devote a single word to rebutting Boeing's argument that it cannot be liable for alleged coworker misconduct because there is no evidence that the misconduct was the result of Boeing's negligence. (*See* Dkt. No. 47 at 19). Quite the opposite, the record shows—and Caldwell concedes through silence—that when Caldwell alerted Boeing management about alleged mistreatment, Boeing promptly took action. (*Id.*). Under similar circumstances, courts routinely dismiss hostile-work-environment claims, and this Court should do the same here. *See, e.g.*, *Sines v. Bellingham Cold Storage Co., LLC*, No. C12-2227RAJ, 2014 WL 1319789, at *4 (W.D. Wash. Mar. 28, 2014) ("In a case where a co-worker is the harasser who created the hostile work environment, the plaintiff bears the additional burden of proving that the employer knew or should have known of the harassment but did not take adequate steps to address it." (citations and internal quotation marks omitted)).[9]

### 3. The Court Cannot Infer Discrimination From Race-Neutral Allegations.

Critically, although Caldwell's opposition alleges a litany of bad acts, it contains almost no evidence that any given act was the result of racial discrimination. Rather, the majority of the alleged bad acts are facially race-neutral and rely upon Caldwell's own subjective spin and speculation to show discrimination. Despite the great rhetorical leaps taken by Caldwell (or his

---

[9] *See also, e.g., Nguyen v. ING Fin. Advisers LLC*, No. C04-1310RSM, 2006 WL 1075216, at *6 (W.D. Wash. Apr. 21, 2006), *aff'd sub nom. Nguyen v. N. Life Ins.*, 234 F. App'x 526 (9th Cir. 2007) (finding that an "employer is responsible for its own actions or omissions, not for the co-worker's harassing conduct" (citations and internal quotation marks omitted)); *Garrett v. Tyco Fire Prods., LP*, 301 F. Supp. 3d 1099, 1123 (N.D. Ala. 2018) ("Concerning co-workers, an employer is liable for co-worker harassment if the employer knew (actual notice) or should have known (constructive notice) of the harassing conduct but failed to take prompt remedial action.").

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT (No. 17-1741 JLR) - 9

**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
+1.202.739.3000

counsel) in the opposition brief, a plaintiff's conclusory assertions cannot support a hostile-work-environment claim. *See*, *e.g.*, *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001) ("[A] jury cannot infer discrimination from thin air" when "[p]laintiffs have done little more than cite to their mistreatment and ask the court to conclude that it must have been related to their race.").

A prime example of a race-neutral allegation is Caldwell's "water cooler" accusation. Although his opposition brief asks the (inflammatory) rhetorical question "Segregated water coolers in 2017?" (Dkt. No. 59 at 6), he completely ignores the undisputed record evidence that: (1) the water cooler was designated for the 787 program (a program for which Caldwell did not work); and (2) numerous employees (including Caucasians) who were not part of the 787 program were told that they could not use the 787 water cooler. (Dkt. No. 47 at 22–23). Caldwell himself admitted during his deposition that he had no reason to think that the office administrator's actions were based on his race, and there is no basis in the factual record to infer race other than Caldwell's unsupported allegations. (*Id.*). This example is illustrative of the majority of Caldwell's alleged discriminatory acts. He points to an incident in which he felt he was treated unfairly, and attributes the perceived unfairness to race without offering any supporting evidence.[10] Such allegations cannot serve as evidence of racial discrimination, however, and the Court should reject Caldwell's hostile-work-environment claim. *See, e.g.*, *Ellis v. SUNY Downstate Med. Ctr.*, No. 06-CV-2735, 2008 WL 11417051, at *4 (E.D.N.Y. Sept. 4, 2008) (finding no relation to race where African-American plaintiff was admonished not to use water cooler at hospital that was reserved for patients, and dismissing discriminatory termination and hostile-work-environment claims).

---

[10] As further examples of this pattern, Caldwell asserts that a coworker commenting on his calculus homework was due to his race (Dkt. No. 59 at 3), that a false accusation about throwing away fiberglass was based on his race (*id.* at 4), that a prohibition on dunking at the Boeing gym was due to his race (*id.* at 7), that theft of his lunch out of a communal refrigerator was based on his race (*id.* at 10), and that coworkers' comments about his royal-blue boots were due to his race (*id.* at 10). For each of these examples—any many others—Caldwell provides zero evidence that any of the purported bad acts were due to his race. Rather, he takes typical workplace grievances and relies upon speculation and assertion to claim that the actions were based on his race.

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT (No. 17-1741 JLR) - 10

**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
+1.202.739.3000

### 4. **<u>Caldwell's Hostile-Work-Environment Allegations Remain Legally Insufficient.</u>**

Boeing understands that certain of Caldwell's allegations are arguably connected to his race, but these still do not rise to the level required for a hostile-work-environment claim. Although Boeing in no way approves or condones the potentially race-based behaviors that Caldwell has alleged, courts routinely dismiss claims alleging more severe behavior.[11]

### 5. **<u>Caldwell's Self-Serving Declaration Cannot Support His Allegations.</u>**

Finally, the Court should be wary of relying in any manner on Caldwell's self-serving declaration submitted in support of his opposition papers. Not only does it contradict portions of Caldwell's prior testimony, it also greatly embellishes his prior allegations. It is a recognized principle that "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). Nor can a declarant embellish prior deposition testimony "in a tactical attempt to evade an unfavorable summary judgment." *Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1225 (9th Cir. 2005). Caldwell's declaration is replete with concerning examples. As but a few:

---

[11] *See, e.g.*, Dkt. No. 47 at 23 n.12 (collecting numerous race-specific cases); *see also Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 802, 805–06 (8th Cir. 2013) (holding that comments over span of three years were offensive, but not sufficiently severe or pervasive); *Ellis v. CCA of Tenn., LLC*, 650 F.3d 640, 647–48 (7th Cir. 2011) (holding that offensive comments related to skin color, confederate flag garb in workplace, and disparate discipline were not sufficiently severe or pervasive to support harassment claim); *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 173, 180 (1st Cir. 2008) (holding that supervisor statements that he "hate[d] Jamaican music and Jamaicans" and that he would "deal with you, you f**king Jamaican," together with comment by second supervisor not in plaintiff's chain of command that she was "not one of [plaintiff's] Jamaican bimbos," were insufficient to constitute hostile work environment); *Elnashar v. Speedway SuperAmerica, LLC*, 484 F.3d 1046, 1050, 1059 (8th Cir. 2007) (holding that supervisor's unwelcome body contact with plaintiff and his belittling statements—"ask[ing plaintiff] if he had a harem, how many wives he had as a Muslim, and whether he rode camels around everywhere in Egypt"—were not "so severe or pervasive that they rose to the level of harassment"); *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 342, 348 (5th Cir. 2007) (holding that supervisor's reference to inner-city youth as "ghetto children" and expressions of "surprise or disdain when she learned that [plaintiff] shopped at an upscale shopping mall, drove a Volvo and had a son that bought and sold cars as a hobby" were insufficient to create hostile work environment).

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT (No. 17-1741 JLR) - 11

**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
+1.202.739.3000

- Caldwell *never* testified in his deposition that Ron Jarvis, a Boeing employee, called him a "N*gga." In fact, he testified the opposite. (*See* Ex. 1, Caldwell Dep. at 184:8–15, 283:10–284:1; *see id.* at 86:19–87:3 ("[T]hey didn't particularly call me the N word . . . .")). Nor did Caldwell make this allegation in his EEOC Charge, Complaint, or discovery responses. (*See* Ex. 4, EEOC Charge, at 6–11; Third Am. Compl., Dkt. No. 42, ¶ 22; Ex. 2, Pl.'s Interrog. Resp. No. 9; Ex. 3, Pl.'s Supp. Interrog. Resp. No. 1). Mentioning this memorable allegation for the first time in his declaration, Caldwell makes no attempt to explain his prior omissions.[12]

- Caldwell testified in his deposition that the Confederate flag incidents all took place at the Frederickson site (Ex. 1, Caldwell Dep. at 192:25–193:3), but now alleges—for the first time, and after being made aware of his statute-of-limitations cutoff through Boeing's briefing—that someone else wore Confederate flag memorabilia to work at Everett in October 2016. Caldwell also fails to offer any evidence how this was directed toward him.

- Caldwell testified in his deposition that his alleged traffic stop was conducted by one Boeing security guard, who made no derogatory gestures, and did not order Caldwell out of his car. (*See* Ex. 1, Caldwell Dep. at 194:5–195:3, 212:5–18). Yet, in his declaration, *multiple* security guards now appear, unlatching their gun holsters and ordering him out of his vehicle in a confrontational manner—and Caldwell now alleges security guards singled him out at both Frederickson *and* Everett. Caldwell offers no explanation for these discrepancies and embellishments.

- Caldwell testified in his deposition that he did not know why his car keys were allegedly taken from his desk and placed in his vehicle (Ex. 1, Caldwell Dep. at 193:18–194:4), but now states that, to him, the action "symbolically" represented "Rosa Parks being told to sit in the back of the bus."[13]

Given the strong concerns that these discrepancies raise, the Court should be wary when reviewing Caldwell's declaration.

## III. CONCLUSION

Boeing respectfully requests that the Court grant its motion, dismiss Caldwell's remaining claims in their entirety, with prejudice, and enter judgment in Boeing's favor.

---

[12] Exhibits 1–4 are appended to the Declaration of Zachary S. Stinson, at Dkt. 62.

[13] With respect to this allegation, Caldwell presents no evidence that it was a coworker—or anyone else— who took his keys from his desk and placed them in his car. It seems equally plausible (and, indeed, perhaps more likely) that Caldwell mistakenly left the keys in his car himself.

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT (No. 17-1741 JLR) - 12

MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
+1.202.739.3000

| | |
|---|---|
| DATED: February 15, 2019 | **MORGAN, LEWIS & BOCKIUS LLP** |
| | */s/ Lincoln O. Bisbee* |
| | Lincoln O. Bisbee, admitted pro hac vice |
| | Zachary S. Stinson, admitted pro hac vice |
| | 1111 Pennsylvania Avenue, NW |
| | Washington, D.C. 20004 |
| | Phone: (202) 739-3000 |
| | Fax: (202) 739-3001 |
| | Email: lincoln.bisbee@morganlewis.com |
| | Email: zachary.stinson@morganlewis.com |
| | |
| | Allison Powers, admitted pro hac vice |
| | 77 West Wacker Drive |
| | Chicago, Illinois 60601 |
| | Phone: (312) 324-1000 |
| | Fax: (312) 324-1001 |
| | Email: allison.powers@morganlewis.com |
| | |
| | **OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.** |
| | |
| | */s/ Laurence A. Shapero* |
| | Laurence A. Shapero, WSBA #31301 |
| | 1201 Third Avenue, Suite 5150 |
| | Seattle, WA 98101 |
| | Phone: (206) 876-5301 |
| | Fax: (206) 693-7058 |
| | Email: laurence.shapero@ogletree.com |
| | |
| | *Attorneys for Defendant* |
| | THE BOEING COMPANY |

<---->

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT (No. 17-1741 JLR) - 13

**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
+1.202.739.3000

# CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which caused a copy of the same to be served via ECF on February 15, 2019, upon:

Reba Weiss
WEISS LAW FIRM, PLLC
12537 15th Ave NE, Suite 108
Seattle, WA 98125-3979
Phone: (206) 508-5933
reba@weisslawfirm.org

Steven H. Haney
Gregory L. Young
HANEY & YOUNG LLP
1055 West Seventh Street, Suite 1950
Los Angeles, CA 90017
Phone: (213) 228-6500
Fax: (213) 228-6501
shaney@haneyyoung.com
gyoung@haneyyoung.com

*Attorneys for Plaintiff Brett Caldwell*

/s/ Zachary S. Stinson
Zachary S. Stinson, admitted pro hac vice
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Phone: (202) 739-3000
Fax: (202) 739-3001
Email: zachary.stinson@morganlewis.com

*Counsel for Defendant The Boeing Company*

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT (No. 17-1741 JLR)- 14

**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
+1.202.739.3000